UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-14041-RGS

CAROL DIANE COOPER and JOHN SCOTT COOPER, as Personal Representative of the Estate of Peter M. Cooper, Jr., Deceased

v.

ALYSSA JANE D'AMORE, f/k/a Alyssa J. Cooper

MEMORANDUM AND ORDER ON CROSS
MOTIONS FOR SUMMARY JUDGMENT

November 10, 2015

STEARNS, D.J.

Plaintiffs – Carol Diane Cooper, the mother of Peter M. Cooper, Jr., who is deceased, and Peter Cooper's estate (represented by John Scott Cooper) – seek to recover from defendant Alyssa Jane D'Amore, who is Peter Cooper's ex-wife, assets distributed to her from an individual retirement account (IRA) that Peter Cooper had owned. Discovery having been concluded on September 14, 2015, the parties now move for summary judgment.

BACKGROUND

Peter Cooper and D'Amore were married in September of 2003. At all times relevant to this action, Peter Cooper and D'Amore were residents of Florida. In October of 2003, Peter Cooper established an IRA with Mesirow

Financial Inc. (where he was then employed). He designated D'Amore as the primary IRA beneficiary, and his mother, Carol Cooper, as the contingent beneficiary.

Peter Cooper and D'Amore divorced in Fort Lauderdale, Florida, in November of 2006. The Final Judgment of Dissolution of Marriage incorporated a Marital Settlement Agreement (MSA) reached between Peter Cooper and D'Amore. Among its provisions, the MSA stipulated that "[e]ach party shall continue to own as his or her own separate property any Individual Retirement Account (IRA), pension or retirement plan in his or her name, and each does hereby waive any claim to such account of the other." Am. Compl. Ex. 3-A – MSA at 4.

In August of 2011, Peter Cooper established a second IRA with TD Ameritrade. He designated his mother (plaintiff Carol Cooper) as the sole beneficiary. He transferred the assets in the Mesirow IRA to the new Ameritrade IRA. Because of a quirk in the securities law, Ameritrade was unable to hold certain bonds contained in the Mesirow account. These securities remained with Mesirow. Peter Cooper died in July of 2012. He did not change the 2003 designation of D'Amore as the beneficiary of the Mesirow IRA prior to his death. In January of 2013, Mesirow distributed the

remaining IRA assets to D'Amore pursuant to the 2003 beneficiary designation.

Plaintiffs filed this case against D'Amore in October of 2014 alleging six claims – Conversion (Count I), Money Had and Received (Count II), Breach of the Marital Settlement Agreement (Count III), Breach of the IRA Trust Agreement (Count IV); Constructive Trust (Count V); and Accounting (Count VI).  Plaintiffs seek summary judgment awarding the Mesirow IRA assets to either Carol Cooper or Peter Cooper's estate.  D'Amore seeks summary judgment confirming her legal entitlement to the assets.

## DISCUSSION

Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  As recited above, the essential underlying events are not disputed.  Consequently, the court may resolve the contested legal issues, all of which involve interpretation of contracts and statutes, as a matter of law.  *See Weiss v. DHL Express, Inc.*, 718 F.3d 39, 44 (1st Cir. 2013); *Hernandez-Miranda v. Empresas Diaz Masso, Inc.*, 651 F.3d 167, 170 (1st Cir. 2011).

D'Amore relies on her unrevoked designation as the primary beneficiary on the Mesirow IRA as the basis for her claim.  Plaintiffs in turn

tender four alternative legal theories challenging the validity of D'Amore's designation as a beneficiary. Plaintiffs first contend that D'Amore waived her interest to the Mesirow IRA by entering the MSA; second, that the governing Illinois law automatically revoked D'Amore's designation; third, that Peter Cooper's 2011 transfer of the assets to the Ameritrade IRA effectively cancelled the beneficiary designation; and fourth, that Florida law operated to void the designation after the transfer. Because the court finds that under Illinois state law, Peter Cooper's designation of D'Amore as the beneficiary was revoked at the time of their divorce, it is unnecessary to address the other three theories.

The parties agree that the Mesirow IRA, pursuant to the terms of the Mesirow Financial Client Agreement in effect at the time of Peter Cooper and D'Amore's divorce, was governed by Illinois state law. Plaintiffs assert that the Mesirow IRA was at the time of the divorce a trust within the meaning of the Illinois Trusts and Dissolutions of Marriage Act. That Act provides that

> [u]nless the governing instrument or the judgment of judicial termination of marriage expressly provides otherwise, judicial termination of the marriage of the settlor of a trust revokes every provision which is revocable by the settlor pertaining to the settlor's former spouse in a trust instrument or amendment thereto executed by the settlor before the entry of the judgment of judicial termination of the settlor's marriage, and any such trust shall be administered and construed as if the settlor's former spouse had died upon entry of the judgment of judicial termination of the settlor's marriage.

4

760 Ill. Comp. Stat. 35/1(a). Plaintiffs reason that upon the entry of the divorce decree, the Act revoked D'Amore's designation as the primary beneficiary on the Mesirow IRA "as if [D'Amore] had died." Consequently, the right to the IRA assets passed immediately to Carol Cooper as the contingent beneficiary.

D'Amore disputes that the Merisow IRA was an express trust governed by the Act. The Act, by its own terms, operates on

> trust[s] created by a nontestamentary instrument executed after the effective date of this Act, except that, unless in the governing instrument the provisions of this Act are made applicable by specific reference, the provisions of this Act do not apply to any . . . (f) instrument under which a nominee, custodian for property or paying or receiving agent is appointed.

760 Ill. Comp. Stat. 35/1(c). D'Amore contends that the IRA was created as a custodial account, and that plaintiffs have no evidence that Peter Cooper ever executed the necessary documents to establish a trust. D'Amore also argues that to the extent that Mesirow labeled the IRA a trust, it was only to take advantage of favorable treatment under the Internal Revenue Code.[1] *See Tucker v. Soy Capital Bank & Trust Co.*, 2012 IL App (1st) 103303, ¶ 37

---

[1] Section 408 of the Internal Revenue Code provides that "*[f]or purposes of this section,* the term "individual retirement account" means a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries . . . ." (emphasis added).

5

("[S]ection 408 of the Code does no more than establish a framework whereby individuals may obtain favorable tax treatment [for their retirement savings]." (citation omitted)).

Under Illinois law, an IRA may be established either as a custodial account or as an express trust. "A custodial account IRA is not an express trust because there is no intent to establish a trust." *In re Estate of Davis*, 225 Ill. App. 3d 998, 1007 (1992).

> In order to find there is a valid express trust, these conditions must be present: an intent to create a trust which may be shown by a declaration of trust by the settlor or circumstances which show the settlor intended to create a trust; a definite trust *res;* ascertainable beneficiaries; a trustee; specification of the purpose of the trust and how it is to be performed; and delivery of the trust property to the trustee.

*Id.* The Court in *Davis* grappled with the applicability of the Trusts and Dissolution of Marriage Act in a fact pattern identical for all practical purposes to this one. Michael Davis designated his wife Carol as the sole beneficiary of his IRA and never undertook to change the designation after they divorced. Following Michael's death, both Carol and Michael's estate claimed the IRA proceeds. The Court found that the requirements to establish an express trust were met because

> there was an intent to establish a trust as evidenced by decedent's execution of the IRA retirement plan adoption agreement which incorporated the trust agreement. The trust *res* was the IRA; "ascertainable beneficiaries" were Carol Davis, or if that

6

designation was not valid, decedent's surviving spouse or, if none, his estate; Lake Shore National Bank was appointed trustee and decedent's contributions to the IRA were delivered to the bank.

*Id.* By way of contrast, in *Tucker* the Court found that the IRAs in question did not constitute trusts giving rise to a fiduciary duty because

> the IRAs in this case specifically state that they are only custodial accounts.  The disclosure statement specifically provided that Soy would merely be "considered" plaintiffs' "agent." The agreement between plaintiffs and Soy provided that Soy was the custodian and would allocate plaintiffs' funds as they indicated. Plaintiffs do not point to any explicit language creating a trust in any of the documents they rely upon.

*Tucker*, 2012 IL App (1st) 103303 ¶ 34.

The record reflects that Peter Cooper expressly authorized the creation of a trust when he opened the Mesirow IRA.  On the October of 2003 beneficiary designation form that serves as the only basis for D'Amore's claim to the IRA assets, Peter Cooper "appoint[ed] Delaware Charter to serve as Trustee."  Am. Compl. Ex. 2-A.[2]  He indicated that he "ha[d] read and underst[oo]d the Trust Agreement . . . and agree[d] to abide by the terms of the plan documents above."  *Id.*  The remaining elements for establishing a

---

[2] The beneficiary designation form, the 2003 Mesirow Financial Client Agreement, and the August of 2010 conversion letter and Mesirow Financial Custodial Agreement and Disclosure Statement, discussed *infra*, were authenticated by Mesirow as business records.  Pls.' Ex. 2 (Mesirow Certification for Subpoenaed Business Records).

valid express trust are easily met – the *res* was the IRA, and D'Amore and Carol Cooper were designated as primary and contingent beneficiaries.

That Peter Cooper authorized the assets to be held in trust by Delaware Charter is further supported by the 2003 Mesirow Financial Client Agreement he executed when he opened the IRA. The Client Agreement indicated that the "Institution Type" was "Delaware Charter Retirement Account (IRA, SEP, etc.)."[3] Am. Compl. Ex. 1-A at 2. That the IRA existed in the form of a trust at the time of the 2006 divorce is conclusively confirmed by the letter sent in August of 2010 by Mesirow to Peter Cooper informing him that because of the resignation of Delaware Charter as the Trustee, his IRA would be converted from a trust to a custodial account.

> Delaware Charter Guarantee & Trust Company, doing business as Principal Trust Company ("Principal Trust") is currently Trustee for your individual retirement account ("LRA") invested with Mesirow Financial, Inc. We are writing to inform you that, effective October 2, 2010, Principal Trust Company is resigning as Trustee. At that time Mesirow Financial, Inc. will restate the IRA to the Mesirow Financial, Inc. Custodial Agreement and Disclosure Statement for Traditional or Roth Individual Retirement Accounts ("Custodial Agreement") and will become Custodian of the IRA.

---

[3] Unlike the IRAs in *Tucker*, neither the beneficiary designation form nor the Mesirow Financial Client Agreement describes the IRA as a custodial account.

Decl. of Ketan Shah Ex. C-1.[4] These documents conclusively rebut D'Amore's contention that the Mesirow IRA (at the time of the 2006 divorce) was considered a trust only for tax purposes.

In sum, the court holds that by operation of the Illinois Trusts and Dissolutions of Marriage Act, D'Amore's designation as the IRA beneficiary was revoked "as if [she] had died upon entry of the judgment of judicial termination of the settlor's marriage." The remaining assets therefore belong to Carol Cooper as the contingent beneficiary.

### ORDER

For the foregoing reasons, plaintiffs' motion for summary judgment is <u>ALLOWED</u>. Defendant's motion for summary judgment is <u>DENIED</u>. The parties are to submit a joint accounting to the court within 21 days, and the court will issue the necessary final judgment thereafter.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

---

[4] In contrast to the 2003 Client Agreement, the 2010 Custodial Agreement states clearly that it is a custodial account. *See* Shah Decl. Ex. C-2 at 1.