UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-14041-RGS

CAROL DIANE COOPER and JOHN SCOTT COOPER, as Personal
Representative of the Estate of Peter M. Cooper, Jr., Deceased

v.

ALYSSA JANE D'AMORE, f/k/a Alyssa J. Cooper

MEMORANDUM AND ORDER ON CROSS
MOTIONS FOR SUMMARY JUDGMENT

January 6, 2017

STEARNS, D.J.

Carol Cooper, the mother of Peter Cooper, and John Scott Cooper, the executor of Peter Cooper's estate, contend that, after Peter Cooper's death, some $228,000 was wrongfully distributed to Alyssa D'Amore, Peter Cooper's ex-wife, from his Mesirow Financial IRA account. The undisputed chronology of relevant events are as follows.

Peter Cooper married D'Amore in 2003. In the same year, Peter Cooper opened an IRA account with Mesirow. On the application form, Peter Cooper designated D'Amore as the primary beneficiary of the account. He also agreed to "appoint Delaware Charter to serve as Trustee. By making this appointment I/We agree to and acknowledge the following: I/We have read and understand the Trust Agreement, Disclosure Statement, and Schedule

of Trustee Fees and agree to abide by the terms of the plan documents listed above." Dkt. No. 63-1. The Delaware Charter Trust Agreement states that the Agreement "is made pursuant to and shall be construed in accordance with the laws of the State of Delaware." Dkt. No. 95-1 § 5.8K.

In 2006, Peter Cooper and D'Amore divorced. However, Peter Cooper did not then or at any later time revoke D'Amore's beneficiary designation with respect to the Mesirow IRA. In 2010, Mesirow informed Peter Cooper that Delaware Charter was resigning as the trustee of his IRA, and that it would instead become the Custodian of the IRA. In 2011, Peter requested Mesirow to transfer all of the assets in the IRA to a new IRA account at TD Ameritrade. (Carol Cooper is designated as the primary beneficiary of the Ameritrade account). Because of a legal complication, Ameritrade was unable to hold certain bonds deposited in the Mesirow account and those remained with Mesirow. Peter Cooper passed away in 2012 and Mesirow distributed the bonds still held in the custodial account to D'Amore according to the 2003 beneficiary designation.

The court, without having the benefit of a copy of the Delaware Charter Trust Agreement, ruled initially in Carol Cooper's favor, reasoning that Peter Cooper's IRA account was a trust governed by Illinois state law, and that the Illinois Trusts and Dissolutions of Marriage Act, 760 Ill. Comp. Stat. 35/1(a),

automatically revoked D'Amore's designation as a beneficiary of the trust upon the couple's divorce. *See* Dkt. No. 93. When the court became aware of the Delaware Charter Trust Agreement, it revised its opinion and awarded summary judgment to D'Amore, rejecting plaintiffs' alternate theories of entitlement to the funds. *See* Dkt. Nos. 111, 113. Plaintiffs appealed, and the First Circuit reversed this court's decision, holding that the Delaware Charter Trust Agreement did not control the distribution of the IRA assets in 2012 because of Delaware Charter's resignation of the trusteeship in 2010. *Cooper v. D'Amore*, 2016 WL 5800002, at *2 (1st Cir. Oct. 5, 2016).

On remand, the issue remains the same. Peter Cooper did not, during his lifetime, modify D'Amore's designation as the primary beneficiary of the Mesirow IRA. The question is whether some intervening event or operation of law revoked that designation.

In 2006, when Peter Cooper and D'Amore divorced, they entered into a Marital Settlement Agreement (MSA) under Florida law in which they each waived claims to the other's retirement accounts. *See* Dkt. No. 63-3 at 5. The First Circuit agreed that, because the MSA failed to designate a substitute beneficiary to the Mesirow IRA account, it did not override the original designation of D'Amore. *See Cooper*, 2016 WL 5800002, at *2, *citing Crawford v. Barker*, 64 So. 3d 1246, 1248 (Fla. 2011).

3

The finalization of the divorce decree is also the moment in time when, if applicable, the Illinois Trusts and Dissolutions of Marriage Act or its Florida law equivalent, Fla. Stat. § 732.703, would have worked to void D'Amore's beneficiary designation.  Under 760 Ill. Comp. Stat. 35/1 § 1(a),

> [u]nless the governing instrument or the judgment of judicial termination of marriage expressly provides otherwise, judicial termination of the marriage of the settlor of a trust revokes every provision which is revocable by the settlor pertaining to the settlor's former spouse in a trust instrument or amendment thereto executed by the settlor before the entry of the judgment of judicial termination of the settlor's marriage, and any such trust shall be administered and construed as if the settlor's former spouse had died upon entry of the judgment of judicial termination of the settlor's marriage.

The Illinois statute specifically defines a revocable provision as one revocable "at the time of the entry of the judgment of judicial termination of the settlor's marriage." *Id.* § 1(e).  Likewise, under Fla. Stat. § 732.703(2),

> [a] designation made by or on behalf of the decedent providing for the payment or transfer at death of an interest in an asset to or for the benefit of the decedent's former spouse is void *as of the time the decedent's marriage was judicially dissolved or declared invalid by court order prior to the decedent's death*, if the designation was made prior to the dissolution or court order. The decedent's interest in the asset shall pass as if the decedent's former spouse predeceased the decedent.

(emphasis added).  It makes sense that the revocation of a beneficiary designation by operation of law would occur only at the kairotic moment – termination of the marriage – and not continue to apply in perpetuity.

4

Where, as here, a trust is outside the purview of state law at the time of a divorce, revoking a beneficiary designation through a retroactive operation of law might likely contradict the parties' then-present intent.

Peter Cooper, in his Mesirow IRA application, agreed to "abide by the terms of [the Delaware Charter Trust Agreement]." Thus, until Delaware Charter resigned as trustee in 2010, Delaware state law, pursuant to the terms of the Trust Agreement, governed Peter Cooper's Mesirow IRA. At the time of 2006 divorce, neither the Illinois nor the Florida statute was applicable, and neither therefore operated to revoke D'Amore's beneficiary designation.[1]

The 2010 restatement of the IRA account from a trust to a custodial account also had no effect on the account's beneficiary designation. *See* Dkt. No. 73-1 at 42 ("This change has no effect on your investments, elections, or beneficiary designations."). The 2011 transfer of assets to Ameritrade, however, is a different kettle of fish. Following the 2010 account conversion, the Mesirow Custodial Agreement governed the IRA. The Custodial Agreement stated that "[t]his Agreement shall terminate . . . when the Depositor delivers written direction to the Custodian to transfer all assets of

---

[1] The Florida statue also expressly excludes trusts whose "governing instruments is governed by the laws of a state other than [Florida]" from its reach. Fla. Stat. § 732.703(4)(g).

the custodial account to a successor trustee, custodian or another retirement plan or directly to the Depositor." Dkt. No. 74-1 at 4. When Peter Cooper opened his Ameritrade account, he indicated on the application that the account would be funded by a "total transfer" from the Mesirow IRA. Dkt. No. 69-1 at 3. This directive was subsequently conveyed to Mesirow.

Because the Custodial Agreement expressly reserved to Mesirow "all the powers provided herein as are necessary or desirable for the orderly liquidation and distribution of the assets of the custodial account," Dkt. No. 74-1 at 4, this court had held that the failure to properly distribute IRA assets must be a claim brought against Mesirow, and not against D'Amore alone. Dkt. No. 113. The First Circuit disagreed. "D'Amore now holds funds from the IRA and was a proper defendant against whom plaintiffs could assert the claim of wrongful distribution." *Cooper*, 2016 WL 5800002, at *2. Consequently, because Peter Cooper's written direction for a total asset transfer terminated the Custodial Agreement, it also terminated the beneficiary designation associated with the custodial account.[2] Thus, in the

---

[2] That Peter Cooper was aware that certain assets could not be transferred to Ameritrade and did not make provisions for their liquidation is immaterial – the Custodial Agreement required only the delivery of an instruction for a transfer. It says nothing about the execution of the instruction.

absence of a continuing beneficiary designation, the Mesirow IRA assets became part of Peter Cooper's estate upon his death.

ORDER

For the foregoing reasons, plaintiffs' motion for summary judgment is <u>ALLOWED</u>.  Defendant's motion for summary judgment is <u>DENIED</u>.  The parties are to submit a joint statement to the court within 21 days of this order identifying any remaining issues this court need decide, and if so, propose an appropriate scheduling order.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE